**MASSEY–FERGUSON, INC., Appellant,**

v.

**F. X. UTLEY, Appellee.**

Court of Appeals of Kentucky.

March 14, 1969.

**58**

Aaron F. Overfelt, Bowling Green, for appellant.

Carl Melton, M. S. Mahurin, Henderson, for appellee.

CULLEN, Commissioner.

Appellant Massey-Ferguson, Inc., is a manufacturer of farming machinery. Farmers Implement Sales Company in Henderson, Kentucky, is a dealer for such equipment, buying the machines wholesale from Massey-Ferguson and selling them at retail. Appellee F. X. Utley is a farmer.

In October 1960 Utley purchased from Farmers Implement Sales Company a Massey-Ferguson No. 20, 2-row, cornhead combine attachment, being a device which, when attached to a combine harvester machine, will cut corn, separate and husk the ears, and shell the kernels. Utley made a down payment of $675 and executed an installment sales contract for the balance of $1,603.56, calling for three equal payments of $534.52 in November of 1961, 1962 and 1963. The contract immediately was assigned to Massey-Ferguson. Utley defaulted in the first payment due under the contract and Massey-Ferguson brought the instant action to recover the full amount of the deferred payments. Utley defended on the ground of breach of implied warranties

of fitness. The case was submitted to a jury which found for the defendant. Judgment was entered accordingly, dismissing the action. Massey-Ferguson moved for an appeal to this court, which was granted. We now have before us the merits of the appeal.

Massey-Ferguson's principal argument is that the defense of breach of implied warranties could not be asserted against Massey-Ferguson because (1) the contract between the dealer and Utley expressly excluded any implied warranties, and (2) Utley had expressly covenanted in the contract that he would not assert against the assignee any defense he might have against the seller.

The arguments bring into consideration several provisions of the Uniform Commercial Code, particularly KRS 355.2–316, relating to exclusion of warranties, and KRS 355.9–206, relating to assertion of defenses against an assignee.

The contract in the instant case contained language expressly excluding implied warranties (as is authorized by KRS 355.2–314 and 355.2–315). However, it was on the *back* of the contract form, with a number of other provisions which substantially filled the back page. The paragraph containing the exclusionary language was headed "WARRANTY AND AGREEMENT" in bold-face capital letters, but the exclusionary language itself was in type of the same size and face as were the general contents of the contract. The circuit court ruled that the attempted exclusion was not valid or effective because it was not *conspicuous* within the requirement of KRS 355.2–316(2) that such an exclusion "must be by a writing and conspicuous."

In KRS 355.1–201(10) the word "conspicuous" is defined as follows:

"(10) 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-

NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court."

The few cases that have interpreted this definition are annotated in 17 A.L.R.3rd 1010 @ 1078 and 1079. They indicate a tendency to be strict in measuring what constitutes conspicuousness.

In the instant case the exclusionary language was not in "larger or other contrasting type or color" as contemplated by the statutory definition. It is true that the *heading* was in large, bold-face type, but there was nothing in the heading to suggest that an exclusion was being made; on the contrary, the words of the heading indicated a *making* of warranties rather than a *disclaimer*. Besides being in ordinary type, the exclusion was on the *back* of the instrument, with nothing on the front, except some words likewise in ordinary type, to direct attention to it. Such a location alone has been held to put the exclusion out of the conspicuous class. See Hunt v. Perkins Machinery Co., 352 Mass. 535, 226 N.E.2d 228.

We concur in the decision of the trial court that the language excluding implied warranties was not "conspicuous." Accordingly, the *dealer* must be considered to have made implied warranties (1) that the machine was "fit for the ordinary purpose for which such goods are used," KRS 355.2–314(2) (c), and (2) that the machine was fit for the purpose for which the buyer required it (there being a showing that the dealer knew of such purpose and the buyer relied on the dealer's skill and judgment to select and furnish a suitable machine), KRS 355.2–315.

However, Massey-Ferguson maintains that a breach of any implied warranty made by the *dealer* cannot be asserted against Massey-Ferguson as assignee of the sales contract, because Utley expressly covenanted in the contract that he would "not set up any claim, which he may have against the seller as defense * * * in any action upon the debt or for possession brought by the seller's assignee." It appears that the circuit court held that this covenant was not enforceable because the dealer was the *agent* of Massey-Ferguson and the latter was therefore primarily a "seller" rather than an "assignee." That reason may not have been entirely valid, but in our opinion a valid reason of a similar nature does exist to justify the holding.

Covenants or agreements of the nature here involved, not to assert against an assignee any claim or defense the buyer may have against the seller, are by KRS 355.9–206(1) made enforceable *only* by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense. This in substance simply expresses the long-established holder-in-due-course rule applicable to commercial paper.

In a substantial number of cases, annotated in 44 A.L.R.2d 8 @ 157 to 161, it was held that a manufacturer to whom a dealer had assigned commercial paper was not a holder in due course. As indicated in the annotation, it appears that in most of the cases the circumstances were held to warrant a conclusion that the manufacturer was the *real vendor* in the transaction. The circumstances most frequently held to be significant were (1) a manufacturer's representative assisted or participated in the sale by the dealer, and (2) the manufacturer's course of dealing was for it to furnish blank sales contracts to its dealer, and for the dealer to immediately and routinely assign the contract to the manufacturer as soon as a sale was made.

In the instant case the evidence was that a factory representative visited Utley with the dealer and participated in making the sale. Also, that Massey-Ferguson followed the course of dealing above described as to supplying blank forms and receiving immediate and routine assignments. So we have present here the two circumstances

most frequently relied upon by other courts as a basis for holding the manufacturer-assignee not to be a holder in due course.

■ It is our opinion that under the circumstances of this case Massey-Ferguson cannot be considered to be within the class of those who are protected by the covenant against assertion of defenses, at least as to the defense of breach of an implied warranty of fitness. We base our conclusion on the proposition that Massey-Ferguson's *conduct* put it in the status of a "seller" and that its status as a "seller" outweighs its status as an "assignee," as those terms are used in KRS 355.9–206 and were used in the contract. It should not be accorded the protection of an assignee against defenses that derived from its actions as a seller.

■ We consider it to be the policy of the Uniform Commercial Code to encourage the supplying of credit for the buying of goods by insulating the lender from lawsuits over the quality of the goods. But we conceive that the insulation was intended primarily for *financial institutions* rather than the manufacturer who finances his own sales. He needs no inducement to supply credit for the purchase of his goods because the whole object of his business is to sell his goods.

Massey-Ferguson argues that the decision in Root v. John Deere Company, Ky., 413 S.W.2d 901, establishes its right to enforce the covenant against assertion of defenses. There the assignee, whom we presume was the manufacturer although the opinion does not so state, was held to be within the protection of the covenant. However, it does not appear that the assignee-manufacturer in that case had engaged in such course of dealings, or had so participated in the sale, as to put him in the category of a "seller." So the case is not controlling here.

■ Two complaints are made by Massey-Ferguson with reference to the instructions. The first is that the court erred in refusing to give a requested instruction which would have submitted to the jury the issue of whether Massey-Ferguson was a "holder in due course." As hereinbefore indicated, it is our opinion that as a matter of law, under the evidence in this case, Massey-Ferguson was not entitled to the protection that is afforded a holder in due course; therefore there was no issue in this regard to be submitted to the jury.

■ The second complaint is of the fact that the instructions, in submitting the issue whether the cornheader was unfit, stated in substance that the dealer was Massey-Ferguson's *agent* and that the sale was made by Massey-Ferguson "through its agent." We agree that this was improper, because under the evidence the dealer was not an agent in true sense. But we think the error was of no significance, in view of our conclusion that Massey-Ferguson had such of the features of a "seller" that the defense of breach of implied warranty could be asserted against it. As we view the case the only issue for submission to the jury was whether in fact the implied warranties had been breached. That issue was submitted, and the reference in the instructions to agency could not have influenced the jury's decision of the issue.

In this opinion we have not indicated what the evidence was with respect to the alleged unfitness of the cornheader. That is because Massey-Ferguson has not questioned the sufficiency of the evidence. In neither of its two motions in the trial court for a directed verdict did Massey-Ferguson state as a ground the insufficiency of proof of breach of warranty, nor was any such ground included in the statement of questions presented in the brief on appeal.

The judgment is affirmed.

EDWARD P. HILL, MILLIKEN, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.