J. I. CASE CREDIT CORPORATION, a
corporation, Plaintiff and Appellee,

v.

Malven SKJOLDAL, Defendant
and Appellant.

No. 12678.

Supreme Court of South Dakota.

Submitted on Briefs May 22, 1980.

Decided Sept. 3, 1980.

Harvey M. Crow, McIntosh, for plaintiff
and appellee.

Robert O'Keefe of Robbins, Von Wald &
O'Keefe, Selby, for defendant and appellant.

FOSHEIM, Justice.

Appellee, J. I. Case Credit Corporation,
brought this action to foreclose its lien and
security interest in a tractor purchased by
appellant, Malven Skjoldal. Appellant's defense of breach of warranty was dismissed
by the trial court. The trial court granted

appellees authority to sell the tractor and dismissed appellant's counterclaim for damages resulting from appellee's wrongful refusal to accept payment when offered. Appellant seeks reversal of the judgment. We affirm.

In March 1976, appellant negotiated with Bill Redman of Redman Implement, Inc., of Lemmon, South Dakota, for the purchase of a used 1973 Steiger Tiger tractor. The negotiation culminated in April 1976 with appellant signing a retail installment contract. That contract contained the payment schedule appellant had requested (payments due June 1976, January 1977, and November 1977). It also contained this waiver of defense clause:

> Seller may assign this contract and in the event of such assignment, Purchaser shall perform all promises herein contained to such Assignee as the owner hereof. After such assignment, Purchaser agrees such Assignee shall have all the rights of Seller hereunder free of any defense or [c]laim Purchaser may have against the Seller as defense, counterclaim, set-off, cross complaint or otherwise, Purchaser's remedy therefor being solely against Seller in a separate action and Purchaser hereby waives any such defense or claim against such Assignee. After Purchaser receives notice of assignment hereof, Purchaser shall make all payments hereunder direct to the holder hereof and Seller shall not be the agent of the holder for transmission of payments or otherwise.

The contract was thereafter assigned to, and financed by, appellee. Appellant took possession of the tractor, used it for a brief time, and returned it to Redman Implement for repairs.

Due to a dispute between appellant and Redman Implement over responsibility for the repair bill, appellant defaulted on the June 1976 payment to appellee and Redman Implement retained possession of the tractor. On September 1, 1976, appellee sent appellant notice that the tractor would be sold. Appellant removed the tractor from Redman Implement's possession, turned it over to the Perkins County Sheriff, and made the delinquent payment to appellee. Appellant then defaulted on the January 1977 payment.

Shortly thereafter, appellant commenced an action against Redman Implement seeking damages and possession of the tractor. Appellant had Redman Implement served with an order directing it to show cause why the tractor should not be delivered to him pending final determination of his action for damages and possession. At the show cause hearing on May 2, 1977, the court granted appellant possession of the tractor conditioned upon (1) payment to appellee of the full balance due under the retail installment contract and (2) filing of an undertaking with the court to secure payment of the repair bill pending determination of responsibility for the bill.

Curtis Hanks, then attorney for both Redman Implement and appellee, called appellee's credit manager to get the payoff figure which was confirmed in writing to Hanks with a copy to Bill Redman. Appellant obtained the payoff figure from Bill Redman, and promptly obtained a bank draft in the amount of $14,125.00 payable to Redman Implement and appellee which he presented to Bill Redman as full payment to appellee of the balance due under the contract. Bill Redman advised appellant that he could not accept the payment and that appellant would have to see Redman's attorney, Curtis Hanks. Hanks refused the payment because it was not payable to appellee alone and because no undertaking had been filed. Appellant did not again offer payment to appellee.

Appellee instituted this action against appellant to foreclose on its security interest in the tractor. Appellant counterclaimed alleging breach of warranty and seeking damages arising from appellee's agent's wrongful failure to accept the full payment of the debt owed when offered. The trial court granted an order dismissing the breach of warranty defense and granted appellee a judgment to sell the tractor and recover $14,125.00 with interest from the date of trial. This appeal is from that order and judgment.

The issues are: (1) Whether the waiver of defense clause in the retail installment contract precludes appellant from asserting a defense of breach of warranty against the assignee of the contract; (2) whether the refusal of payment by assignee's agent resulted in damage to appellant; and (3) whether the assignor of the contract was the ostensible agent of the assignee for acceptance of payments.

■ Appellant challenges the validity of the waiver of defense clause in the retail installment contract, and contends this case is governed by SDCL 57–36–13 of South Dakota's Uniform Commercial Code which provides: "When a seller retains a purchase money security interest in goods the chapters on sales (chapters 57–2 to 57–18, inclusive) govern the sale and any disclaimer, limitation or modification of the seller's warranties." That contention fails, however, because SDCL 57–36–13 applies only when the purchase money security interest is held by the "seller" so that the entire transaction retains the character of a sale. The UCC definition of "seller" in SDCL 57–2–3(4) is "a person who sells or contracts to sell goods." Redman Implement is the seller in this case and it assigned its entire security interest in the tractor to appellee. Appellee as assignee of a retail installment contract is not a seller. Therefore, SDCL 57–36–13 does not govern the validity of the waiver clause. *AgriStor Credit Corp. v. Lewellen*, 472 F.Supp. 46 (N.D.Miss.1979). In addition, SDCL 57–2–2 provides that the chapters on sales apply only to transactions in goods and not to security transactions such as this assignment of a retail installment contract to a financer.

The validity of the waiver of defense clause at issue is governed by SDCL 57–36–12. That section provides:

Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapters on commercial paper (chapters 57–9 to 57–17, inclusive). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.

Under SDCL 57–36–12, the waiver of defense clause is enforceable [1] and if appellee took the retail installment contract "for value, in good faith and without notice of a claim or defense," it is subject only to those defenses available against a holder in due course enumerated in SDCL 57–12–17, none of which is applicable here.

Appellant contends that appellee did not take the retail installment contract in good faith because appellee supplied Redman Implement with forms containing a preprinted assignment clause and because appellee is a corporation formed by a manufacturer to finance sales of its products. He cites *Rehurek v. Chrysler Credit Corp.*, 262 So.2d 452 (Fla.App.1972), in which the court held that the financer was not a good faith purchaser because of the close connection between it and the seller. In *Block v. Ford Motor Credit Co.*, 286 A.2d 228 (D.C.App. 1972), while recognizing the "close connectedness" doctrine, the court said "close connectedness" sufficient to constitute lack of good faith was not established without a

1. While this section is subject to SDCL chapter 57–10A as to consumer transactions, SDCL chapter 57–10A does not apply to the purchase of a tractor because it is not "consumer goods." The UCC distinguishes between consumer goods and equipment as types of collateral and a tractor clearly comes within the definition of equipment in SDCL 57–35–28, "[g]oods are 'equipment' if they are used or bought for use primarily in business (including farming or a profession)." *Beam v. John Deere Company of St. Louis*, 240 Ark. 107, 398 S.W.2d 218 (1966); *Central National Bank v. Wonderland Realty Corp.*, 38 Mich.App. 76, 195 N.W.2d 768 (1972). Consumer goods, in contract, are defined in SDCL 57–35–27 as "[g]oods . . . used or bought for use primarily for personal, family or household purposes."

showing of "a substantial voice in, or control of, or a vested interest in the underlying transaction." Id. at 233. There has been no showing of any such involvement or interest of appellee in the sale of the tractor to appellant.

■ "Close connectedness" may also exist between a financer and seller due to the financer having knowledge of a particular transaction or of the way a seller does business.[2] A financer with this kind of knowledge fails to meet the standard of SDCL 57–36–12 because the financer has notice of claims or defenses the purchaser has against the seller. SDCL 57–1–7 provides in part that:

> [A] person has 'notice' of a fact when
> (1) He has actual knowledge of it; or
> (2) He has received a notice or notification of it; or
> (3) From all the facts and circumstances known to him at the time in question he has reason to know that it exists.
> A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it
> . . .

When a financer has participated with a seller in a sale through a representative or when a financer knows a seller is in business to generate commercial paper for assignment rather than primarily to sell products, the financer is generally held not to have taken the assignment without notice and cannot then enforce the waiver of defense clause. *Massey–Ferguson, Inc. v. Utley*, 439 S.W.2d 57 (Ky.1969); *Associates Discount Corp. of Iowa v. Fitzwater*, 518 S.W.2d 474 (Mo.App.1974); *Massey–Ferguson Credit Corp. v. Brown*, 169 Mont. 396, 547 P.2d 846 (1976); *Star Credit Corp. v. Molina*, 59 Misc.2d 290, 298 N.Y.S.2d 570 (N.Y.Civ.Ct.1969). It is not alleged that appellee participated in the sale to appellant or knew of any business practice of Redman Implement that would have given it notice of a buyer's claim or defense. There was not "close connectedness" between appellee and the seller in this case and there is no allegation that appellee had notice of any claim or defense when it took the assignment. Courts have generally held waiver of defense clauses enforceable in commercial transactions involving sale of equipment when there is no showing of financer involvement in the sale sufficient to constitute lack of good faith or to establish that the financer had notice of a claim or defense. *McCoy v. Mosley Machinery Co., Inc.*, 33 F.R.D. 287 (E.D.Ky.1963); *AgriStor Credit Corp. v. Lewellen, supra; Beam v. John Deere Co. of St. Louis*, 240 Ark. 107, 398 S.W.2d 218 (1966); *Westinghouse Credit Corp. v. Chapman*, 129 Ga.App. 830, 201 S.E.2d 686 (1973); *Jennings v. Universal C.I.T. Credit Corp.*, 442 S.W.2d 565 (Ky.1969); *Root v. John Deere Co. of Indianapolis, Inc.*, 413 S.W.2d 901 (Ky.1967); *Morgan v. John Deere Co. of Indianapolis, Inc.*, 394 S.W.2d 453 (Ky.1965); *ITT–Industrial Credit Co. v. Milo Concrete Co., Inc.*, 31 N.C.App. 450, 229 S.E.2d 814 (1976); *General Electric Credit Corp. v. Tidenberg*, 78 N.M. 59, 428 P.2d 33 (1967); *National Bank of North America, Inc. v. Deluxe Poster Co., Inc.*, 51 App.Div.2d 582, 378 N.Y.S.2d 462 (1976); *B. W. Acceptance Corp. v. Richmond*, 46 Mich.2d 447, 259 N.Y.S.2d 965 (1965); *General Electric Credit Corp. v. Glamorous Laundry Rooms, Inc.*, 8 UCC Rep.Serv. 1119 (N.Y.Sup.Ct.1971); *John Deere Industrial Equipment Co., Inc. v. Delphia*, 266 Or. 116, 511 P.2d 386 (1973); *John Deere Co. of Moline v. Behling*, 26 Utah 2d 30, 484 P.2d 170 (1971); *Cox v. Galigher Motor Sales Co.*, 213 S.E.2d 475 (W.Va.1975).

■ Accordingly, we conclude that appellee meets the standard required by SDCL 57–36–12 to take the contract free of all claims or defenses in this case. The waiver of defense clause is enforceable by appellee and precludes appellant from asserting a defense of breach of warranty against appellee. The breach of warranty defense asserted by appellant was properly dismissed by the trial court.

Appellant further contends that the trial court erred in finding that Bill Redman was not appellee's agent and in dismissing his

---

**2.** Note, The Status of UCC § 9–206–The Waiver of Defense Clause, 31 Univ. of Pitt. L.Rev. 687, 703 (1970).

counterclaim for damages caused by appellee's wrongful refusal to accept payment of the debt when offered. Appellee denies that Bill Redman was its agent but concedes that Curtis Hanks was its agent with authority to accept payment. Only if there was damage resulting from the refusal of payment, however, would appellee have any liability for such refusal.

■ Appellant contends that he was damaged as a result of his inability to regain possession of the tractor. Appellant's regaining possession of the tractor was conditioned on complying with the court order of May 2, 1977, requiring that an undertaking be filed with the court. Since appellant failed to comply with that order, no obligation to accept payment arose. Because there was no obligation to accept payment, it is unnecessary to decide whether Redman was acting as appellee's agent when refusing payment.

Hence, appellant was deprived of possession of the tractor not by the refusal of payment but by his own failure to comply with the undertaking condition of the court order. Accordingly, the trial court properly dismissed appellant's counterclaim for damages.

The judgment is affirmed.

All the Justices concur.